UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHN J. WALTERICH,

             Plaintiff,    18-CV-1329

      v.              DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

             Defendant.

## INTRODUCTION

Plaintiff John J. Walterich brought this action pursuant to Title II of the Social Security Act (the "Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits ("DIB"). ECF No. 1. Presently before the Court are the parties' competing motions for judgment on the pleadings. ECF Nos. 6, 9. For the reasons that follow, Plaintiff's motion for judgment on the pleadings (ECF No. 6) is GRANTED, the Commissioner's motion (ECF No. 9) is DENIED**,** and the matter is REMANDED for further administrative proceedings consistent with this Decision and Order.

## BACKGROUND

On November 10, 2015, Plaintiff filed an application for DIB alleging disability beginning on July 15, 2014. Administrative Record, ECF No. 5 ("Tr."), at 150. After the application was denied, Plaintiff timely requested a hearing. Tr. at 91.

On January 25, 2018, Plaintiff first appeared with a non-attorney representative, Tara M. Tomory, and testified at a hearing before Administrative Law Judge, Timothy M. McGuan ("the ALJ"). Tr. at 30-64. Jay Steinbrenner, the Vocational Expert ("VE"), also testified at the hearing. Tr. at 53-60. The ALJ issued an unfavorable decision on April 4, 2018. Tr. at 12-24. Plaintiff

then timely requested review by the Appeals Council. Tr. at 144-46.  On November 7, 2018, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner. Tr. at 1-5.  Plaintiff subsequently filed this lawsuit.

## LEGAL STANDARD

### I.      District Court Review

The scope of this Court's review of the ALJ's decision denying benefits to Plaintiff is limited. It is not the function of the Court to determine *de novo* whether Plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012).  Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed.  *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007).  "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted).  "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).

### II.     Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or

combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.      The ALJ's Decision

At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 15, 2014.  Tr. at 14.  At step two, the ALJ found that Plaintiff suffered from several severe impairments: obesity, mild herniation of the cervical spine with mild stenosis, impingement syndrome and bursitis on the right shoulder, and anxiety.  *Id.* The ALJ determined that Plaintiff's plantar sheath tear on the left foot, diabetes, asthma, COPD, depression, hypertension, congestive heart failure, and sleep apnea were non-severe impairments.  Tr. at 15.

The ALJ proceeded to the third step of the analysis and found that the severity of Plaintiff's impairments did not meet or equal the criteria of any listing.  Tr. at 15-16.  He then determined that Plaintiff retained the RFC to perform light work with several limitations.  Tr. 17.  Specifically, the ALJ found that Plaintiff could frequently finger and handle with one upper extremity with no limits to do so with the other upper extremity; occasionally interact with the public with no limits in his interaction with coworkers and supervisors; and have a sit/stand option where he could sit or stand up to an hour after sitting or standing.  *Id.*

At step four, the ALJ found that Plaintiff could perform his past relevant work as a maintenance supervisor, and that this work would be within the parameters of Plaintiff's RFC.  Tr. at 22.  Even though the ALJ determined that Plaintiff would be able to perform his past relevant work, he, nonetheless, proceeded to step five, where he determined that there were jobs in the national economy that a person of Plaintiff's age, education and work experience could perform, such as a stock checker and an estimator.  Tr. at 24.  Accordingly, the ALJ concluded that Plaintiff was not disabled.

**II.    Analysis**

Plaintiff argues that the ALJ erred in evaluating Plaintiff's past relevant work by failing to consider that his work as a maintenance supervisor encompassed duties of another job – building maintenance worker – and as such, the ALJ should have classified it as a composite job.  ECF No. 6-1 at 13-19, ECF No. 10 at 1-4.  Plaintiff submits that this error was not harmless because a building maintenance worker is classified by the Dictionary of Occupational Titles ("DOT") as a medium exertion job, which he could not perform because the ALJ limited him to light work in the RFC.  *Id.*  Plaintiff further argues that had the ALJ properly determined that he could not perform his past relevant work in step four of the analysis, there is a possibility that he would have found Plaintiff entitled to benefits in step five based on Rule 202.06 of Medical Vocational Guidelines  ("the Grids") since he was an individual approaching an advanced age, with high school education, but who was limited to light work and was unable to perform skilled or semi-skilled past work.[1]  *Id.*  In response, the Commissioner argues that the ALJ properly determined Plaintiff's past relevant work in step four, and submits that any possible error would be harmless because the ALJ properly relied on the testimony of the VE when he found two jobs available in the national economy that a person of Plaintiff's age, education and work experience could perform.  ECF No. 9-1 at 5-8.  The Court agrees with Plaintiff for the following reasons.

   A.  The VE's Hearing Testimony

At the hearing, the VE testified that Plaintiff's past relevant work was a utilities and maintenance supervisor, DOT 899.131-018, light exertion, skilled, SVP of 8.  Tr. at 55.  He indicated that an individual of Plaintiff's age with high school diploma, who is able to perform the full range of light work in accordance with the ALJ's RFC would be able to perform his past

---

[1] Because the Court remands this matter for further proceedings consistent with this Decision and Order, Plaintiff's remaining arguments will not be addressed by the Court.

relevant work as it is typically performed.  Tr. at 56.  However, the VE specified that Plaintiff could not perform such work as he performed it.  *Id.*

When asked about alternate jobs that might exist in the national economy that such individual could perform, the VE identified two: a stock checker, DOT 299.667-014, light, unskilled, SVP of 2, with 248,333 jobs available in the national economy; and an estimator, DOT 169.267-038, sedentary, skilled, SVP of 7, with 187,703 jobs available nationally.  Tr. at 57-58.  The VE also testified that if such individual were to miss four or more days per month due to his conditions, any employment would be ruled out.  Tr. at 60.

### B. Classification of Past Relevant Work under Step Four

At step four, an ALJ considers whether a claimant is capable of performing his or her past relevant work based on the RFC determined by the ALJ.  *See* 20 C.F.R. § 416.920 (a)(4)(iv). "Pursuant to both case law and Social Security Ruling 82–62, in order to determine at step four whether a claimant is able to perform her past work, the ALJ must make a specific and substantial inquiry into the relevant physical and mental demands associated with the claimant's past work, and compare these demands to the claimant's residual capabilities." *Cline v. Colvin*, No. 13-CV-1060-JTC, 2015 WL 3937214, at *5 (W.D.N.Y. June 26, 2015) (quoting *Matejka v. Barnhart,* 386 F.Supp.2d 198, 204-05 (W.D.N.Y.2005) and Social Security Ruling ("SSR") 82-62, 1982 WL 31386, at *3-4 (S.S.A. 1982)).

The regulations provide that if a claimant can return to her past relevant work, "either as the claimant actually performed it or as generally performed in the national economy," then the claimant is not disabled.  *See* 20 C.F.R. § 404.1560(b)(2).  SSR 82-61 provides that the test for *actual* performance of a plaintiff's past relevant work is "[w]hether the [plaintiff] retains the capacity to perform the particular functional demands and job duties peculiar to an individual job *as . . . she actually performed it*." SSR 82-61, 1982 WL 31387, at *1 (S.S.A. 1982) (emphasis

added). The test for *general* performance of plaintiff's past relevant work is "[w]hether the [plaintiff] retains the capacity to perform the functional demands and job duties of the job *as ordinarily required by employers* throughout the national economy." *Id.* at *2 (emphasis added). The ALJ may rely on job descriptions contained in the DOT to define how jobs are "usually performed in the national economy." *Id.* Generally, in order to survive step four, "the [plaintiff] has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally. This inquiry requires separate evaluations of the previous specific job and the job as it is generally performed." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (citations omitted). "The ALJ is not typically required to find that the claimant can perform the past relevant work as actually performed if he finds that the claimant can perform the job as generally performed." *Delgado v. Berryhill*, No. 3:17-CV-54 (JCH), 2018 WL 1316198, at *17 (D. Conn. Mar. 14, 2018).

This analysis, however, is different when a claimant, like Plaintiff here, argues that he worked a composite job. "When significant variation exists between a claimant's description of her job and the DOT description of the job, it may be the result of a composite job." *Long v. Berryhill*, No. 16-CV-760S, 2018 WL 618119, at *4 (W.D.N.Y. Jan. 30, 2018) (internal quotation marks omitted). SSR 82-61 provides that a composite job has "significant elements of two or more occupations and, as such, ha[s] no counterpart in the DOT."[2] SSR 82-61, 1982 WL 31387, at *2. When an ALJ encounters a composite job, she must evaluate it in accordance with the particular facts of each case. *Id.* "If the ALJ finds that a plaintiff's past relevant work is a composite job,

---

[2] The Court acknowledges competing caselaw that exists in this district applying provisions of SSR 82-61 rather than treating it as a composite job. *See Johnson v. Colvin*, No. 13-CV-6319-CJS, 2014 WL 1394365, at *7 (W.D.N.Y. Apr. 9, 2014) ("Since the VE testified that both the pharmaceutical packaging inspector and camera inspector positions were, in fact, individually listed in the DOT, they are not composite jobs."). However, more recent cases decided in this district "uniformly found that where a claimant's past relevant work is a blend of duties from two different DOT job descriptions . . . the claimant's past relevant work was a composite job." *Weiser v. Berryhill*, No. 1:16-CV-00763(MAT), 2018 WL 6011163, at *4 (W.D.N.Y. Nov. 16, 2018).

then it cannot suffice at step four as work 'as generally performed in the national economy.'" *Noelle v. Comm'r of Soc. Sec.,* No. 5:15-CV-1301(GTS/WBC), 2017 WL 9509957, at *6 (N.D.N.Y. Feb. 13, 2017), *adopted*, No. 5:15-CV-1301 (GTS/WBC), 2017 WL 945094 (citing Program Operations Manual System ("POMS") DI 25005.020(B)).

In POMS DI 25005.020,[3] the SSA clarified that "[t]he claimant's [past relevant work] may be a composite job if it takes multiple DOT occupations to locate the main duties of the [past relevant work] as described by the claimant." *See* SSA, POMS, DI 25005.020 Past Relevant Work (PRW) as the Claimant Performed It (Apr. 13, 2017), available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425005020. "[W]hen comparing the claimant's RFC to a composite job as the claimant performed it, [the ALJ has to] find the claimant capable of performing the composite job only if he or she can perform all parts of the job." *Id.*

Here, Plaintiff contends that the ALJ erroneously determined that he was capable of performing his past relevant work as a maintenance supervisor. ECF No. 6-1 at 13-17. Specifically, he asserts that the ALJ and the VE overlooked the fact that even though his Adult Disability Report and hearing testimony identified his position as a maintenance supervisor, his past job, nonetheless, was a composite one because in addition to his supervisory duties Plaintiff performed duties of a maintenance worker. *Id.* Specifically, in his Adult Disability Report Plaintiff described his past job duties as follows:

> Maintained the grounds and building of 2 large apartment complexes. Plowed snow using a plow truck, shoveled snow off of sidewalks and porch stoops that could not be reached with plow or snowblower, pushed snowblower to clear sidewalks, spread salt in spreaders and by hand, maintained all the lawn equipment but making repairs to equipment such as lawn mowers, edgers, leaf blowers, trimmers, etc. Mowed lawns using professional mower. Remodeled apartments by replacing windows, doors, appliances, counter-tops, flooring and cabinets. Prepped for carpet

---

[3] The Second Circuit has held that "POMS guidelines are entitled to 'substantial deference, and will not be disturbed as long as they are reasonable and consistent with the statute.'" *Lopez v. Dep't Soc. Servs.*, 696 F.3d 180, 186 (2d Cir. 2012) (citations omitted).

installation by removing old carpet and padding. Did plumbing and electrical work for remodeling apartments and repairs that tenants needed made. Took care of swimming pool by cleaning and adding chemical, opening and closing pool and repairing and keeping all pool equipment in good working order. Ordered parts needed for repairs and remodels. Served eviction papers to tenants per management.

Tr. at 166.  Plaintiff also indicated that he frequently lifted 50 pounds or more, and the heaviest weight he ever lifted was 100 pounds.  *Id.*  Plaintiff also stated that he was a lead worker, who supervised fourteen people half of the time and worked along them for the other half.  *Id.*  Plaintiff was not responsible for making decisions regarding hiring and firing, did not use technical knowledge or skills, and did not complete any reports while performing his job.  *Id.*

At the hearing, Plaintiff testified that from 2003 to 2014 he was employed as a maintenance supervisor of two apartment complexes, when he oversaw over 500 apartments combined and supervised the work of 14-16 people.  Tr. at 34, 41, 54.  Even though his position was of a maintenance supervisor, Plaintiff specifically noted that he did not consider himself a supervisor in its traditional sense because he worked alongside his crew performing a wide range of maintenance duties that included landscaping, snow plowing, electrical work, plumbing, paining, apartment restoration, and remodeling.  Tr. at 54-55.

Following Plaintiff's hearing testimony, the VE identified Plaintiff's past relevant job as a utilities and maintenance supervisor, DOT 899.131-018, skilled, SVP of 8.  Tr. at 55.  Notably, while indicating that the utilities and maintenance supervisor position was a light exertion job, the VE noted that "the claimant worked alongside. A building maintenance worker would be working at the medium level."  *Id.*  This testimony is important because by making references to the exertion level of a building maintenance worker, the VE alluded to the existence of another job – a building

maintenance worker – whose duties Plaintiff may have performed as part of his work as a utilities and maintenance supervisor.[4]

Like the VE, the ALJ appears to have noted that Plaintiff performed duties other than of a supervisor when he questioned Plaintiff about the crew he supervised, referring to him as a "maintenance person."

> Q: Okay. And you were obviously supervising them, telling them what to do, or - -
> A: I was not a supervisor. I worked with my crew every day.
> Q: All right. So what kind of activities or duties did you have as a maintenance person?
> A: Well, it's a huge list when you take care of apartments. From landscaping to snow plowing to electrical plumbing, painting, apartment restoration, you name it. We did pretty much everything.
> Q: Okay.
> A: Ripping rug out was all part of remodeling apartments and - -
> Q: All right.

Tr. at 54-55.

---

[4] In support of his argument, Plaintiff provides a description of DOT code 382.664-010 (Janitor), which appears to be based on "DOT . . . Various Military-Civilian occupational titles cross-references. Some alternate titles suggested by *SkillTRAN* customers and others." ECF No. 6-2 at 1. Plaintiff identifies several alternate jobs titles for this position such as apartment maintenance worker, floor technician, general cleaner, janitor, maintenance engineer, resident manager, night cleaner, and building superintendent. *Id.*

The Court notes that DOT code 382.664-010 is a listing for a janitor position that has only two alternative job titles such as maintenance engineer and building superintendent. *See* DICOT 382.664-010 (G.P.O.), 1991 WL 673265 (Jan. 1, 2016). The position is listed as medium work, SVP of 3, and includes the following duties:

> [k]eeps hotel, office building, apartment house, or similar building in clean and orderly condition and tends furnace, air-conditioner, and boiler to provide heat, cool air, and hot water for tenants, performing any combination of following duties: Sweeps, mops, scrubs, and vacuums hallways, stairs and office space. Regulates flow of fuel into automatic furnace or shovels coal into hand-fired furnace. Empties tenants' trash and garbage containers. Maintains building, performing minor and routine painting, plumbing, electrical wiring, and other related maintenance activities, using handtools. Replaces air-conditioner filters. Cautions tenants regarding complaints about excessive noise, disorderly conduct, or misuse of property. Notifies management concerning need for major repairs or additions to lighting, heating, and ventilating equipment. Cleans snow and debris from sidewalk. Mows lawn, trims shrubbery, and cultivates flowers, using handtools and power tools. Posts signs to advertise vacancies and shows empty apartments to prospective tenants.

*Id.*

Plaintiff's testimony, as well as statements made in the Adult Disability Report about duties of a maintenance worker that he performed, at the very least created a possibility that his past work was a composite one that combined the duties of a utilities and maintenance supervisor with responsibilities of a maintenance worker. However, despite questioning Plaintiff about his maintenance worker's duties, both the VE and the ALJ ignored any such possibility in their analysis and, as a result, failed to determine whether Plaintiff's past relevant work was a composite job. *See, e.g.*, *Long*, 2018 WL 618119, at *4 (remand was warranted when "the ALJ neither acknowledged nor discussed the possibility of a composite job" and misclassified Plaintiff's past medium work as light); *Delgado v. Berryhill*, No. 3:17-CV-54 (JCH), 2018 WL 1316198, at *17 (D. Conn. Mar. 14, 2018) (matter remanded when neither the VE nor the ALJ considered whether Plaintiff's job was a composite one when the record indicated at least the possibility of Plaintiff's past relevant work being a composite job). Notably, the record is not clear about precisely what duties Plaintiff performed that were central to each position or to the extent he performed them. Indeed, neither the ALJ nor the VE elicited any testimony about the frequency and the nature of his supervisory and building maintenance duties. *Delgado*, 2018 WL 1316198, at *17 ("[N]o testimony was elicited concerning the frequency and duration of each type of duty [Plaintiff] performed, how central each duty was to his job, or the nature of the cleaning that he performed."). Instead, the ALJ only focused on Plaintiff's job title as a maintenance supervisor and conveniently matched it with his light RFC, without regard to the composite nature of the job as Plaintiff performed it. *See Weiser v. Berryhill*, No. 1:16-CV-00763(MAT), 2018 WL 6011163, at *3 (W.D.N.Y. Nov. 16, 2018) ("[N]either the VE nor the ALJ acknowledged or discussed that Plaintiff's past work was a composite job. Instead, based on the VE's testimony and the RFC

finding, the ALJ determined that Plaintiff was capable of performing the cashier checker component of her previous work and thus, was not disabled.")

Because the ALJ failed to appropriately consider the possibility that Plaintiff's past relevant job was a composite one, and because of the lack of testimony from the VE on this issue, the Court does not have sufficient information in the record to conclude whether the ALJ properly considered Plaintiff's past relevant work in step four of the sequential analysis. *See, e.g.*, *Susan M. v. Comm'r of Soc. Sec.*, No. 1:18-CV-0623 (GTS), 2019 WL 2754480, at *5 (N.D.N.Y. July 2, 2019) ("Even if it appears that [Plaintiff's] additional duties might be encompassed by the D.O.T. codes identified by Plaintiff, neither the parties to the action nor the Court are a vocational expert with the knowledge to make that assessment, and such finding should more properly be made by the ALJ rather than by a reviewing court."); *Delgado,* 2018 WL 1316198, at *10 ("Assessing whether past relevant work is a composite job or not is a fact-specific inquiry that depends on the particulars of the case" and the Court cannot make this assessment because of the limited information as to Plaintiff's duties). Therefore, the matter is remanded back to the Commissioner for further development of the record and reconsideration of step four analysis.

The importance of the ALJ's failure to consider whether Plaintiff's job was a composite one is hard to overemphasize. In fact, such determination could not only change the outcome of the ALJ's step four analysis, but could also impact his step five determination. Had the ALJ found that Plaintiff's past relevant work was a composite job that combined the duties of a utilities and maintenance supervisor with the duties of a maintenance worker, there is a reasonable probability that ALJ would move to the step five analysis because he would have concluded that Plaintiff could not perform his past relevant work due to the medium exertion level associated with the job of a maintenance worker. *Long*, 2018 WL 618119, at *5 ("[I]t is reversible error for the ALJ to

make a Step Four finding that a claimant is not disabled merely because he or she can perform the tasks required for one of the two DOT job descriptions.") (internal citations omitted).

The Commissioner argues that even if the ALJ erred in step four of the analysis, any such error is harmless because the ALJ made an alternative finding in step five when he determined that Plaintiff could perform two jobs – stock checker and an estimator – that exist in significant numbers in the national economy.  ECF No. 9-1 at 8-9.  Indeed, if an ALJ makes an improper finding in step four, but also makes a finding in step five that is supported by substantial evidence, any such error made in step four could be harmless.  *Brandon v. Colvin*, No. 5:15-CV-0386(GTS), 2016 WL 4532148, at \*10 (N.D.N.Y. Aug. 29, 2016) ("[E]ven if the ALJ erred in determining that Plaintiff could perform her past relevant work at step four, the ALJ's alternative finding that Plaintiff could perform other existing work at step five was supported by substantial evidence.") However, the Court here is not convinced that the ALJ's step five finding was supported by substantial evidence because of the ALJ's error in evaluating Plaintiff's past relevant work in step four.

Generally, in step five of the sequential analysis, the ALJ is required to consider a claimant's RFC and vocational factors such as age, education, and past work experience to determine if jobs exist in the national economy that a claimant could perform – the determination that the Commissioner can do either by applying the Grids or by offering testimony from a VE. *See* 20 C.F.R. § 404.1520 (a)(4)(v); *see also Clark v. Berryhill*, 697 F. App'x 49, 50 (2d Cir. 2017) (summary order). Plaintiff here argues that had the ALJ's properly analyzed his past relevant work

in step four, it would have triggered the application of the Grid Rule 202.06, which could have resulted in a favorable disability determination.[5]   ECF No. 6-1 at 17-19.

Rule 202.06 of the Grids "requires that a claimant of advanced age who is at least a high school graduate, who previously held a skilled or semi-skilled job that he can no longer perform but who has the residual functional capacity to perform light work, is not to be found disabled if he has job skills that are transferable but must be found disabled if he does not."   *Draegert v. Barnhart*, 311 F.3d 468, 473 (2d Cir. 2002) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, § § 202.07, 202.06).   Accordingly, a claimant who fulfills the age requirement and is limited to light work is not disabled "only if she has skills obtained through her previous work and only if those skills are transferable to other jobs in the national economy. The reasoning behind that rule is that 'a person of advanced age has little time to learn a new skill and apply it to a new job, especially if his ability to work has been limited by a medical disability.'"   *Higgs-Wilson v. Saul*, No. 17-CV-768, 2019 WL 2537296, at *3 (W.D.N.Y. June 20, 2019) (internal citations omitted). "Transferability of skills is thus critical for claimants of advanced age." *Basta v. Comm'r of Soc. Sec.*, No. 18-CV-0986L, 2019 WL 6713616, at *2 (W.D.N.Y. Dec. 10, 2019).

Here, Plaintiff was born on August 13, 1963, and was 4 months away from his fifty-fifth birthday at the time the ALJ issued his decision.   Therefore, Plaintiff was an individual closely approaching advanced age who was "within a few days to a few months of reaching an older age category."[6]   20 C.F.R § 404.1563.   Even though the ALJ acknowledged Plaintiff being only months

---

[5] As discussed below, Grid Rule 202.06 refers to an individual of an advanced age (age 55 and order), and not to an individual closely approaching advanced age (age 50-54) as Plaintiff suggests.   ECF No. 6-1, 17 n.4; *see also* 20 C.F.R. § 404.1563 (d) and (e).

[6] The regulations describe borderline age situations as instances when a claimant is "within a few days to a few months of reaching an older age category, and [when] using the older age category would result in a determination or decision that [the claimant is] disabled." *See* 20 C.F.R. § 404.1563.   They further obligate an ALJ not to apply the age categories mechanically in a borderline situation, but, instead, to "consider whether to use the older age category after evaluating the overall impact of all the factors of your case." *Id*

away from the advanced age category, he, nonetheless, decided not to apply such category in his analysis because Plaintiff had "a long continuous work history with past relevant work that ended in the recent past, had past relevant work that existed in many areas, used common processes and was not in an isolated industry."  Tr. at 23.

Because a claimant's past relevant work is a factor that the ALJ has to consider in borderline age situations, *see* POMS DI 25015.006 Borderline Age (July 6, 2017) https://secure.ssa.gov/apps10/poms.nsf/lnx/0425015006, the ALJ's proper determination of Plaintiff's past relevant work in step four becomes crucial in his application of Grid Rule 202.06 in step five of the analysis.  Specifically, if the ALJ considered Plaintiff to be of an advanced age, such determination could trigger his analysis of transferability of Plaintiff's skills, and could ultimately lead to a finding of disability if the ALJ determined Plaintiff's skills to be non-transferrable.

The Court notes that when the issue of skills and transferability arises, the ALJ is generally required to make findings of fact about claimant's transferrable skills, and "[w]hen a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the . . . ALJ's decision."  *Clark*, 697 F. App'x at 50 (citing SSR 82-41, 1982 WL 31389, at *7).  Here, there was no finding made by the ALJ regarding whether Plaintiff's skills were transferrable.  Tr. at 23.  By relying on his understanding of Plaintiff's past relevant work, the ALJ simply considered Plaintiff's chronological age at the time of the decision, as opposed to applying the advanced age category, which would have, at the very least, raise the issue of transferability of Plaintiff's skills acquired at his past work.  Tr. at 23.  However, transferability of Plaintiff's skills was not discussed at the hearing.  Instead, the VE identified two jobs that an individual of Plaintiff's age could

perform without providing any analysis of the skills acquired by Plaintiff at his past work and how such skills would transfer to the two jobs the VE identified.[7]  *See June S. v. Comm'r of Soc. Sec.*, No. 5:17-CV-669 (DJS), 2018 WL 3626423, at *6 (N.D.N.Y. July 27, 2018) (VE's failure to testify about specific actual skills performed by Plaintiff in her past work and their applicability to the jobs identified warranted remand).

Therefore, for the reasons set forth above, the Court finds that remand for further administrative proceedings is necessary so that the Commissioner can properly apply SSR 82-61 in step four of the sequential analysis to determine Plaintiff's past relevant work and consider his findings in the remainder of the analysis.  Having found remand necessary, the Court need not and does not address Plaintiff's remaining arguments.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 6) is hereby GRANTED, and the Commissioner's motion for judgment on the pleadings (ECF No. 9) is DENIED.  This case is hereby REMANDED to the Commissioner for further proceedings consistent with this order.  The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: April 30, 2020
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

---

[7] One of the jobs the VE identified was a stock checker (DOT 299.667-014), which is an unskilled job. Tr. at. 24. Because the regulations call for transferability of skills to skilled or semi-skilled work, the ALJ will need to address the consistency of the VE's testimony to the regulations if the issue of transferability of Plaintiff's skills is reached on remand. The SSA recognizes that "an individual cannot transfer skills to unskilled work." SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000); *see also* 20 C.F.R. § 404.1568(d)(4)(1) (transferrable stills are those "that can be used in other jobs, when the skilled or semi-skilled work activities [Plaintiff] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work.")